UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON

| | |
|---|---|
| **UNITED STATES of AMERICA,** | **CASE NO. 5:24-CR-35-KKC-EBA** |
| **Plaintiff,** | |
| v. | **OPINION AND ORDER** |
| **ALEXANDER MIGUEL LAYKOVICH,** | |
| **Defendant.** | |

*** *** ***

This matter is before the Court on Defendant Alexander Miguel Laykovich's motion to dismiss the indictment. (DE 26.) Laykovich was indicted for possessing a firearm in violation of 18 U.S.C. § 922(g)(3), which prohibits firearm possession by unlawful users of any controlled substance; and 18 U.S.C. § 922(4), which prohibits the possession of a firearm by a person who has been adjudicated as a "mental defective". Laykovich now presents facial challenges to the constitutionality of § 922(g)(3) and § 922(4), as well as an as-applied challenge to § 922(g)(3). For the following reasons, the Court will deny the defendant's motion to dismiss.

I

Laykovich argues that the Second Amendment requires his indictment be dismissed unless the government can show that § 922(g)(3) and § 922(4) are consistent with our Nation's historical tradition of firearm regulation. In doing so, he makes facial challenges to these two provisions. A facial challenge to a law's constitutionality is an effort "to invalidate the law in each of its applications, to take the law off the books completely." *Speet v.*

*Schuette*, 726 F.3d 867, 871 (6th Cir. 2013) (quoting *Connection Distrib. Co. v. Holder*, 557 F.3d 321, 335 (6th Cir. 2009)). "In contrast to an as-applied challenge, which argues that a law is unconstitutional as enforced against the plaintiffs before the court, a facial challenge is not an attempt to invalidate the law in a discrete setting but an effort 'to leave nothing standing[.]'" *Id.* at 872 (internal citations omitted).

To succeed in a typical facial attack, a plaintiff must establish "that no set of circumstances exists under which [the statute] would be valid." *United States v. Stevens*, 559 U.S. 460, 473 (2010). The fact that a statute "might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid[.]" *See United States v. Salerno*, 481 U.S. 739, 746 (1987) (explaining that the overbreadth doctrine has not been recognized outside the limited context of the First Amendment). The United States Supreme Court has repeatedly emphasized that facial challenges are disfavored. *Citizens United v. FEC*, 558 U.S. 310, 399 (2010).

## II

The Second Amendment provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In *District of Columbia v. Heller*, 554 U.S. 570 (2008) and in *McDonald v. Chicago*, 561 U.S. 742 (2010), the Supreme Court clarified that this protection guarantees "the right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense." *New York State Rifle & Pistol Assoc. v. Bruen*, 142 S. Ct. 2111, 2122 (2022). The Court further held that the Second Amendment protects "an individual's right to carry a handgun for self-defense outside the home." *Id.* In so doing, the Court replaced the prevailing test for assessing laws that restrict the right to bear arms. *Id.* at 2125-26. Previously, federal courts applied a two-step approach that assessed history and

then conducted means-end scrutiny. *Id.* at 2125. In *Bruen*, the Supreme Court dispensed with the scrutiny analysis and clarified that only the historical analysis is appropriate in Second Amendment challenges. *Id.* at 2126.

The Supreme Court also explained that the Second Amendment's meaning at the time of its enactment defines its scope. *Id.* at 2126, 2137. Accordingly, in analyzing firearm regulations, courts must first determine whether "the Second Amendment's plain text covers an individual's conduct . . . ." *Id.* If so, "the Constitution presumptively protects that conduct" and the Government must justify its regulation. *Id.* To do so, the Government "must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified control.'" *Id.* at 2126. If the Government shows that the regulated conduct "falls beyond the Amendment's original scope, 'then the analysis can stop there; the regulated activity is categorically unprotected.'" *Id.* (quoting *United States v. Greeno*, 679 F.3d 510, 518 (6th Cir. 2012)).

Recently, the Supreme Court clarified how courts should approach this historical analysis of Second Amendment restrictions in *United States v. Rahimi*, 144 S. Ct. 1889 (2024). The Government does not have to find a "historical twin" to the restriction at issue, but a "historical analogue." *Id.* at 1898. "[T]he appropriate analysis involves considering whether the challenged regulation is consistent with the principles that underpin the Nation's regulatory tradition." *Id.* "A court must ascertain whether the new law is 'relevantly similar' to laws that our tradition is understood to permit, 'apply[ing] faithfully the balance struck by the founding generation to modern circumstances.'" *Id.* "For example, if laws at the founding regulated firearm use to address particular problems, that will be a

3

strong indicator that contemporary laws imposing similar restrictions for similar reasons fall within a permissible category of regulations." *Id.* "And when a challenged regulation does not precisely match its historical precursors, it still may be analogous enough to pass constitutional muster." *Id.* (quotation marks omitted).

### A

*Bruen's* first step requires that the Court assess whether the Second Amendment's plain text applies to Laykovich. This analysis asks three questions: (1) whether Laykovich is one of the people whom the Second Amendment protects; (2) whether the weapon that Laykovich possessed is in common use today; and (3) whether the plain text of the Second Amendment protects Laykovich's specific conduct. *See United States v. Goins*, 647 F. Supp. 3d 538, 544 (E.D. Ky. Dec. 21, 2022). The parties do not dispute that Laykovich's firearms are weapons that are in common use and that the Second Amendment protects his conduct. Rather, the Government contends that Laykovich is not one of the people who is protected by the Second Amendment because he poses a danger to others.

Laykovich argues that an individual does not lose Second Amendment protections "merely because he or she is deemed 'dangerous' by society." (DE 32 at 1.) The Court, however, need not reach the question of whether individuals deemed dangerous to others are *inherently* stripped of Second Amendment protections because Laykovich's facial challenges fail under the scrutiny of *Bruen's* historical analysis.

### B

Laykovich has failed to show that § 922(g)(3) is facially unconstitutional because the statute survives *Bruen's* second step. This law states that: "It shall be unlawful for any person who is *an unlawful user of or addicted* to any controlled substance . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any

4

firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(g)(3) (emphasis added). The Court finds that history supports Congress's decision to strip persons who are unlawful users or addicts of controlled substances of their right to bear arms.

History is "especially relevant in analyzing the Second Amendment because it is an inherited right." *Goins*, 647 F. Supp. 3d at 548. A court is not, however, "obligated to sift the historical materials for evidence to sustain [the Government's] statute." *Bruen*, 142 S. Ct. at 2150. That is the Government's burden. *Id.* The Court's role is to decide the case "based on the historical record compiled by the parties." *Stevens v. Mich. State Court Admin. Office*, No. 21-1727, 2022 WL 3500193, at *6 (6th Cir. 2022). Here, the Government has met its burden of demonstrating that § 922(g)(3) is consistent with this country's historical tradition of firearm regulation.

The Supreme Court explained that "[the] historical inquiry that courts must conduct will often involve reasoning by analogy" and "determining whether a historical regulation is a proper analogue for a distinctly modern firearm regulation requires a determination of whether the two regulations are 'relevantly similar.'" *Bruen*, 142 S. Ct. at 2132. The laws need not be identical; they need only be a "representative historical *analogue*, not a historical *twin*." *Id.* at 2133. Two key metrics that guide a court in its determination are: "how and why the regulations burden a law-abiding citizen's right to armed self defense." *Id.* Further, the year of the adoption of the Bill of Rights is the most relevant time to consider in *Bruen's* historical analysis. *Id.* at 2137.

Notably, this Court has already found that § 922(g)(3) passes constitutional muster under the *Bruen* analysis in *United States v. Slone*, 702 F.Supp.3d 544 (E.D. Ky. Nov. 20, 2023). The Court based its conclusion on historical evidence such as the disarmament of

those deemed to be "dangerous and untrustworthy" in the Statute of Northampton; late 18th and early 19th century state laws that prohibited the bearing of arms "in a way that spreads fear or terror" among the people and common law that understood that the sovereign could strip individuals of weapons if it deemed them violent or a threat to the peace; other 19th-century state laws prohibiting the possession of firearms while intoxicated; and the Supreme Court's affirmation that "longstanding prohibitions on the possession of firearms by felons and the mentally ill" are "presumptively lawful[.]" *Slone*, 702 F.Supp.3d at 549, 550. Nothing in *United States v. Rahimi* indicates that the Court must change its course on this interpretation.

Nevertheless, Laykovich argues that the Court should come to a different conclusion in this matter. He contends that the Western District of Oklahoma had it right when it found that § 922(g)(3) was facially unconstitutional because it "is a complete deprivation of the core right to possess a firearm for self-defense, turning entirely on the fact that an individual is a[n unlawful] user of [a controlled substance]." *United States v. Harrison*, 654 F.Supp.3d 1191, 1201-02 (W.D. Okla. Feb. 3, 2023). Yet the Court is not bound or persuaded by the Western District of Oklahoma, nor does it find the characterization of § 922(g)(3) as a "complete deprivation" to be entirely accurate.

This Court has previously noted that "the Sixth Circuit has strongly indicated that to be an 'unlawful' user' for purposes of § 922(g)(3), a defendant must have engaged in regular use over a period of time proximate to or contemporaneous with possession of the firearm." *United States v. Strange*, No. 5:23-097-DCR, 2023 WL 8458225, at *4 (E.D. Ky. Dec. 6, 2023) (citing *United States v. Burchard*, 580 F.3d 341, 346-47 (6th Cir. 2009)). "Regular use" is key here. This restriction on Second Amendment rights is not a permanent deprivation; it simply aims to temporarily deprive those unlawfully using or likely to use controlled substances of their access to firearms. This restriction would likely not apply, for

example, to an individual who unlawfully used a controlled substance one time eight months ago.

The Court has no reason to depart from the Supreme Court's guidance that prohibitions on the possession of firearms by the mentally ill are presumptively lawful, dicta or not. Further, Laykovich has not persuaded the Court that its conclusion in *Slone*—that § 922(g)(3) is relevantly similar to historical regulations aimed at preventing potentially dangerous persons from possessing and using firearms—is not justified. This necessitates the failure of Laykovich's facial challenge to this provision.

### C

Further, Laykovich has failed to show that § 922(g)(4) is unconstitutional in all of its applications. This law states that: "It shall be unlawful for any person who has been adjudicated as a mental defective or who has been committed to a mental institution to ship or transport in interstate or foreign commerce . . . any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(g)(4). Federal regulations have defined adjudication as a mental defective as: "A determination by a court, board, commission, or other lawful authority that a person, as a result of marked subnormal intelligence, or mental illness, incompetency, condition, or disease (1) [i]s a danger to himself or to others; or (2) [l]acks the mental capacity to contract or manage his own affairs." 27 C.F.R. § 478.11(a).

The Supreme Court has repeatedly stated that longstanding prohibitions on the possession of firearms by the mentally ill are presumptively lawful. *See District of Columbia v. Heller*, 554 U.S. 570, 626, 636 (2008); *McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010); *United States v. Rahimi*, 144 S. Ct. 1889, 1902 (2024). While Laykovich points out that these statements are dicta and not binding, they are nonetheless persuasive

when approaching the issues at hand. Yet it is arguments that he makes in his reply brief that makes it impossible to carry the heavy burden of this facial challenge.

Laykovich claims that *Rahimi* is not applicable to the Court's review of § 922(g)(4) because the Supreme Court "limit[ed] its holding to the question before it[.]" (DE 32 at 4.) In *Rahimi*, the Supreme Court concluded only this: "An individual found by a court to pose a credible threat to the physical safety of another may be temporarily disarmed consistent with the Second Amendment." *Rahimi*, 144 S. Ct. at 1903. But despite arguing that this holding was limited to that particular case, Laykovich points to an application of § 922(g)(4) that recreates that exact holding. In some cases, a court can find that an individual poses a "danger . . . to others" due to "subnormal intelligence, or mental illness, incompetency, condition, or disease[,]" adjudicate them as a mental defective, and thus temporarily deprive them of their Second Amendment rights.[1] Such an application falls squarely within the Supreme Court's holding in *Rahimi*.

In pursuing a facial challenge to § 922(g)(4), Laykovich was required to show that the statute was unconstitutional in all of its applications—that there is "no set of circumstances" under which the statute would be valid. *United States v. Salerno*, 481 U.S. 739, 745 (1987). For the aforementioned reasons, he has failed to do so. Accordingly, his facial challenge to § 922(g)(4) must be denied.

**D**

In the alternative, Laykovich presents an as-applied challenge to § 922(g)(3) and argues that the indictment does not sufficiently show that he was an "unlawful user" of a controlled substance at the time of arrest. In his reply, he concedes that as-applied

---

[1] This deprivation of Second Amendment rights is, in fact, temporary. The Government notes that an individual subject to the prohibitions of § 922(g)(4) may obtain relief by completing a state-run relief from disabilities program. 34 U.S.C. § 40915(a). Kentucky is one of 33 states that operates such a program.

8

challenges "are frequently deferred by trial courts to not invade the province of the jury" and that "the Court may choose to do so here[.]" (DE 32 at 5.) Because this challenge is tantamount to attacking the sufficiency of the evidence and the Court has already found that § 922(g)(3) is consistent with the Nation's historical regulation of firearms, the Court finds that this challenge is best suited for the jury and its findings of fact.

### III

For the aforementioned reasons, the Court hereby ORDERS as follows:

1. Defendant Laykovich's motion to dismiss (DE 26) is DENIED.

2. The Jury Trial is scheduled for January 21, 2025 at 9:00 a.m. in Lexington, Kentucky. Counsel and parties to be present at 8:30 a.m. All pretrial deadlines are reset relative to the new trial date.

3. Pursuant to the Speedy Trial Act provisions of Title 18, United States Code, Section 3161(h)(1)(D), the time required for trial of Defendant Laykovich shall be tolled from the date of the instant order until the new trial date of January 21, 2025, such period being a delay contemplated by Title 18, United States Code, Section 3161(h)(1)(D).

This 2nd day of October, 2024.

*Karen K. Caldwell*
KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY